## IN THE COURT OF APPEALS OF IOWA

No. 19-1773
Filed December 18, 2019

**IN THE INTEREST OF S.C., J.C., A.C., and J.C.,**
**Minor Children,**

**S.H., Mother,**
        Appellant.
_____

        Appeal from the Iowa District Court for Woodbury County, Mark C. Cord III, District Associate Judge.


        A mother appeals the termination of her parental rights to four children. **AFFIRMED.**


        Jessica R. Noll of Deck Law PLC, Sioux City, for appellant mother.

        Thomas J. Miller, Attorney General, and Ellen Ramsey-Kacena, Assistant Attorney General, for appellee State.

        Maxine Buckmeier of Maxine M. Buckmeier, P.C., Sioux City, attorney and guardian ad litem for minor children.


        Considered by Vaitheswaran, P.J., Mullins, J., and Vogel, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2019).

**VAITHESWARAN, Presiding Judge.**

A mother appeals the termination of her parental rights to four children, born in 2008, 2011, 2012, and 2015.[1] She contends (1) the record lacks clear and convincing evidence to support the grounds for termination cited by the district court; (2) termination was not in the children's best interests; and (3) the district court should have afforded her six additional months to work toward reunification.

We may affirm if we find clear and convincing evidence to support any of the grounds cited by the district court. *See In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012). On our de novo review, we focus on Iowa Code section 232.116(1)(f) (2019), which requires proof of several elements including proof the children cannot be returned to the mother's custody.

The State applied to have the children temporarily removed from the mother's care after a man who was staying with her beat one of the children with a belt, causing "deep, black blue" bruising on "almost his entire right leg." The district court granted the application, later ordered the children's continued removal, and adjudicated them in need of assistance. The children remained out of the mother's care through the termination hearing fourteen months later.

The oldest child was in no position to be returned to his mother's custody. According to the department of human services case manager, his behaviors required ongoing placement in a group care facility and he had an unhealthy bond with the mother—an outgrowth of having to serve as her caretaker as well as the

---

[1] The children's father was imprisoned for third-degree sexual abuse and does not appeal the termination of his parental rights.

younger children's caretaker. She testified the child "carrie[d] a great deal of guilt about everything."

The second child, who reported severe trauma at the age of four, was doing well in her foster placement and, according to the case manager, had "completed the majority of the trauma narrative." The case manager stated the mother was not capable of parenting her.

As for the third child, he was hospitalized at the age of five based on "out of control" behaviors and "homicidal tendencies." His behaviors improved following his placement in a highly-structured foster home where the foster parents provided him with "step by step instructions" to complete daily activities such as brushing his teeth. Although the foster home was not a permanent placement option, the lack of structure in the mother's home precluded return of the child to her custody.

The fourth child was the only child with whom the mother had regular contact in the form of weekly supervised visits. Although the mother testified that the visits went well, the case manager expressed concern about her ability to protect any of the children and set appropriate boundaries with strangers, despite her receipt of multiple services.

The mother's therapist and peer-support specialist essentially confirmed the absence of progress on this front. Her therapist reported "multiple no-show and cancelled appointments" and reported she was "chronically late to therapy." She stated, "Due to her inconsistency in attending therapy appointments, it became difficult for [her] to work on and complete goals for therapy." The peer-support specialist similarly reported that the mother "did not attend appointments on a regular basis" and "did not want to talk . . . about the trauma that her children went

through and how that has an impact on their daily lives." Although the specialist "worked extensively on healthy boundaries," she reported that the mother did not appear to "retain[] any of the information." Based on the mother's failure to internalize the recommended behavioral changes, we agree with the district court that the children could not be returned to her custody.

We also agree termination was in the children's best interests. *See* Iowa Code § 232.116(2). The oldest three children showed the effects of extensive trauma spanning a period of years. The youngest child was present in the home during the incident precipitating removal. Although the mother acknowledged mistakes were made, she continued to allow individuals to stay with her and failed to express an understanding of the danger they could pose to her children.

Finally, the district court appropriately denied the mother's request for six additional months to work toward reunification. The mother received voluntary services before the children were removed and a host of services after the removal without significant progress on the key issue of discerning and maintaining boundaries. Immediate termination of her parental rights was warranted.

**AFFIRMED.**